**Cassandra Blake, OSB #193336**
**David Henretty, OSB #031870**
**Edward Johnson, OSB #965737**
Oregon Law Center
230 NE Second Ave., Suite F
Hillsboro, OR 97124
Tel: (503) 640-4115
Fax: (503) 640-9634
cblake@oregonlawcenter.org
dhenretty@oregonlawcenter.org
ejohnson@oregonlawcenter.org

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CHANTELLE WATSON<br><br>   Plaintiff,<br><br>v.<br><br>PROVIDENCE HEALTH & SERVICES –<br>OREGON. DBA PROVIDENCE ST.<br>VINCENT MEDICAL CENTER,<br><br>   Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>Employment Discrimination - Title VII;<br>Americans with Disability Act; Family<br>Medical Leave Act; Oregon Civil Rights<br>Laws<br><br>**DEMAND FOR JURY TRIAL** |

## I. PRELIMINARY STATEMENT

1. Plaintiff Chantelle Watson is a Black woman who was employed as a food service assistant at Providence St. Vincent Medical Center in Beaverton, Oregon, from February 2018 until January 2020. As alleged with greater particularity below, Plaintiff's supervisors treated her with hostility during the course of her employment because of her race and disability and eventually terminated her employment after she used protected leave. Plaintiff seeks her damages under Title VII of the Civil Rights Act of 1964, Title I of the Americans with Disabilities Act, the Family Medical Leave Act, and Oregon civil rights laws.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to the following laws:
   a. 42 U.S.C. § 2000e-5, as this action pertains to federal civil rights claims;
   b. 28 U.S.C. § 1331, as this action arises under the laws of the United States; and
   c. 28 U.S.C. § 1367, as the state claims that arise are related to the federal claims, so as to form part of the same case or controversy under Article III of the United States Constitution.
3. All of the acts complained of herein were committed in the state of Oregon.

## III. PARTIES

4. Plaintiff Chantelle Watson (hereinafter "Ms. Watson") is a United States citizen and a resident of Oregon.
5. At all relevant times, defendant Providence Health Services Oregon (hereinafter "Providence") is a domestic nonprofit corporation incorporated under the laws of the state of Oregon and registered to conduct business in Oregon.

6. Providence employed 50 or more employees at all times relevant to this complaint and did so in more than 20 workweeks in both the current and previous calendar years.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On or about June 19, 2020, Ms. Watson timely filed charges of discrimination under Title VII of the Civil Rights Act of 1964, Title I of the Americans with Disabilities Act, ORS § 659A.030, and ORS § 659A.112 with the Oregon Bureau of Labor and Industries (BOLI). These charges were simultaneously filed with the Equal Opportunity Employment Commission (EEOC) pursuant to a work sharing agreement between the two agencies.

8. On June 18, 2021, BOLI notified Ms. Watson of her right to file private suit on her Oregon discrimination claim.

9. On June 22, 2021, EEOC notified Ms. Watson of her right to file a private suit with regard to her federal claims.

## V. FACTUAL ALLEGATIONS

10. Ms. Watson is a Black woman.

11. Providence employed Ms. Watson as a food service assistant from approximately February 12, 2018 to January 24, 2020, at its location in Beaverton, Washington County, Oregon.

12. Ms. Watson's primary job duty was as a cashier in the Eatery.

13. On information and belief, at all relevant times, Ms. Watson was one of only two Black staff members employed in the Eatery.

14. At all relevant times, Ms. Watson suffered from anxiety and bipolar disorder, which lasted or was expected to last six months or more and substantially limited one or more of her major life activities.

15. At all relevant times, Providence was aware of Ms. Watson's disabilities as she openly discussed her limitations and diagnosis while employed.

16. Ms. Watson received compensation on an hourly basis and was earning approximately $15.63 per hour on her last day of employment with Providence.

17. Throughout her employment, Ms. Watson was subjected to disparate treatment and hostility due to her race, color, and disability.

18. At all relevant times, Brandon Tjaden was employed by Providence as Ms. Watson's direct supervisor and had authority to hire and fire Ms. Watson, or to otherwise alter the terms of Ms. Watson's working conditions.

19. At all relevant times, Kristen Trout was employed by Providence as the Nutrition Site Director. She was Brandon Tjaden's direct supervisor and had the authority to hire and fire Ms. Watson, or to otherwise alter the terms of Ms. Watson's working conditions.

20. Beginning in February 2018, Ms. Watson regularly wore a brooch on her uniform. On or around December 18, 2018, Brandon Tjaden told Ms. Watson that she was violating dress code policy and could no longer wear the brooch. Brandon Tjaden told Ms. Watson that wearing the brooch was akin to advertising for Nike or Adidas. One of Ms. Watson's supervisors, Humberto Diaz, regularly wore shirts bearing Nike insignia throughout the course of Ms. Watson's employment with Providence.

21. On or around December 18, 2018, a customer yelled at Ms. Watson in front of a crowd of customers. As a result, Ms. Watson had an anxiety attack related to her disability.

Brandon Tjaden sent Ms. Watson home. It was not common practice or policy to send home or suspend employees from work under these circumstances.

22. On or around December 20, 2018, Ms. Watson met with Kristen Trout to discuss why she was sent home on December 18, 2018. Kristen Trout could not explain why Ms. Watson had been sent home.

23. On or around December 31, 2018, Kristen Trout sent Ms. Watson an email stating that she was not to wear the brooch and that the dress code policy was being revised for clarification. On information and belief, the policy was never revised, and no other employees were told they were in violation even though Ms. Watson observed many employees in violation on a regular basis.

24. On or around January 2, 2019, Kristen Trout approached Ms. Watson at her job post and told her that she could no longer wear her brooch for food safety reasons. Kristen Trout did not oversee day-to-day management of employees and rarely interacted with staff. Ms. Watson's coworker, standing beside her during the interaction, was in violation of the dress code but Kristen Trout said nothing to the coworker nor took any subsequent action against her for the dress code violation.

25. On or around January 2, 2019, Ms. Watson emailed Kristen Trout to tell her that she was experiencing disparate treatment with the enforcement of the dress code policy.

26. On or around January 8, 2019, Ms. Watson's supervisor Humberto Diaz told her that she would be sent home by order of Brandon Tjaden if she was seen wearing the brooch.

27. On or around January 9, 2019, Ms. Watson told the human resources office (hereinafter "HR") that she was being treated differently at work. HR told Ms. Watson that she would need to provide the names of two individuals who had witnessed this treatment. Ms.

Watson provided the names of two coworkers. The coworkers were never contacted by HR in response to Ms. Watson's report of disparate treatment.

28. On or around January 17, 2019, Ms. Watson contacted HR once again and stated that she was experiencing harassment and differential treatment, and that the situation was very stressful for her.

29. Prior to January 18, 2019, Ms. Watson's supervisor, Humberto Diaz, told her that Providence should have offered her a benefitted position when she completed approximately 1200 hours of work. As of January 18, 2019, Ms. Watson had completed more than 1200 hours of work at Providence.

30. On or around January 18, 2019, Ms. Watson again met with HR. Ms. Watson reported that she believed that she had been discriminated against because she was not offered a benefitted position, despite her asking for one. She reported that three white women who had been employed at Providence for less time than Ms. Watson were now working in benefitted positions. By this time, Ms. Watson had worked in a non-benefitted position for almost a year and had not received a position with benefits. At the end of the meeting, HR unexpectedly told Ms. Watson that she would be allowed to wear the brooch while working.

31. On or around January 22, 2019, Ms. Watson's scheduled hours dropped from approximately 32 to 40 hours per week to only 16 hours per week. On information and belief, Ms. Watson's hours were decreased as a result of her reports of discrimination at work.

32. On or around January 22, 2019, Ms. Watson contacted HR to report the retaliatory decrease in hours.

33. On or around February 5, 2019, Ms. Watson met with HR, Brandon Tjaden, and Kristen Trout. HR told Ms. Watson that the purpose of the meeting was to discuss why she was sent home on or around December 18, 2018, and dress code policy clarifications. She was told that her reports of discrimination were a "separate issue" that would not be discussed. Based on information and belief, HR never investigated Ms. Watson's reports of disparate treatment, despite being told by HR that Providence was obligated to do so.

34. From on or around February of 2019 to approximately May 2019, Brandon Tjaden told Ms. Watson several times that she had "big hair" and complained that her hats did not fit.

35. From on or around February of 2019 to approximately May 2019, Brandon Tjaden told Ms. Watson that he hated the color of her Providence issued uniform shirt. At least once, the comment was made in front of other employees. Ms. Watson's coworkers wore the same shirt, but Brandon Tjaden did not make similar comments to them.

36. From on or around February of 2019 to approximately May 2019, Brandon Tjaden scheduled Ms. Watson for several shifts in which she was required to train new employees. Training new employees was not one of Ms. Watson's job duties. Ms. Watson told Brandon Tjaden that training shifts were causing her a great deal of stress, but he continued to schedule her for the shifts.

37. From on or around February 2019 to approximately May 2019, Brandon Tjaden told Ms. Watson that Providence received several customer complaints about her and told her that she needed to "watch her tone" with customers. Ms. Watson told Brandon Tjaden that they served a diverse clientele and that she believed it was only white people that complained about her. Brandon Tjaden told Ms. Watson that he would not "go there" with her.

38. On or around August 12, 2019, Ms. Watson sent Brandon Tjaden a text message telling him that the training shifts she was being asked to do were causing her a great deal of anxiety.

39. On or around August 12, 2019, Ms. Watson was scheduled to train a new employee and Brandon Tjaden did not relieve her of the position. When Ms. Watson arrived at work, she told supervisor Humberto Diaz that she could not train the employee because of her anxiety. Humberto Diaz told Ms. Watson that she was being "unprofessional" and insisted that she train the employee. This interaction caused Ms. Watson to have an anxiety attack related to her disability. A short time later, Brandon Tjaden and Humberto Diaz called Ms. Watson into the office and told her to immediately clock out because she was being "unprofessional."

40. On or around August 16, 2019, Ms. Watson's coworker, Allanah Steen, emailed HR to report that Ms. Watson was being treated differently because of her race and invited HR to contact her for follow-up. HR never responded to Ms. Steen's report.

41. On or around August 20, 2019, Ms. Watson emailed HR to report sexual harassment by her supervisor Humberto Diaz and several incidents of race discrimination by Brandon Tjaden. Humberto Diaz repeatedly asked her out, despite her saying "no," and he would hug her frequently and tell her he loved her. Ms. Watson tried to avoid him to protect herself from the harassment.

42. On or around August 21, 2019, Ms. Watson had a meeting with HR and Brandon Tjaden. At the meeting, Brandon Tjaden made comments about Ms. Watson's "big hair" and told her that there had been several customer complaints about her attitude. Ms. Watson's concerns about race discrimination and sexual harassment were not addressed.

43. On or around August 23, 2019, HR emailed Ms. Watson to tell her that Brandon Tjaden could suspend her from work while he conducted an investigation regarding the customer complaints.

44. On or around August 25, 2019, Ms. Watson was removed from the work schedule.

45. On or around August 29, 2019, Ms. Watson was granted medical leave pursuant to the Family Medical Leave Act (hereinafter "FMLA") until November 1, 2019, due to a serious health condition that made Ms. Watson unable to perform her essential job functions. Ms. Watson's FMLA leave was extended until January 6, 2020.

46. On or around January 9, 2020, Ms. Watson had a meeting with Brandon Tjaden. Ms. Watson thought the meeting was to discuss her return to work. Instead, Brandon Tjaden gave Ms. Watson a written disciplinary action for customer complaints occurring between July and August of 2019, prior to Ms. Watson's FMLA leave. The corrective action included the incident occurring on or around August 12, 2019, when Ms. Watson's disability prevented her from training a new employee.

47. On or around January 10, 2020, Ms. Watson returned to work following her FMLA leave.

48. On around January 19, 2020, Ms. Watson was physically assaulted by her coworker Nelly Ozgur, a white woman, following a disagreement regarding the storage of a food service product. Ms. Watson retreated several times from the argument and Nelly Ozgur followed her each time. Ms. Watson texted Brandon Tjaden immediately after the assault to alert him to the situation. Neither Brandon Tjaden nor anyone from management or HR contacted Ms. Watson until on or around January 24, 2020.

49. Nelly Ozgur had previously started arguments with other employees and was not suspended or fired following her assault on Ms. Watson.

50. On or around January 24, 2020, Providence suspended Ms. Watson from work, and later that same day, terminated her employment.

51. Ms. Watson was capable of performing the essential functions of her job with or without a reasonable accommodation.

52. At no time during the course of her employment did Providence engage in discussions about making reasonable accommodation for Ms. Watson's disability.

53. As a result of Providence's unlawful actions, Ms. Watson has suffered loss of enjoyment of life, humiliation, mental suffering, emotional distress, stress, anxiety, lost wages, and other damages in amounts to be proved at trial.

## VI. CLAIMS FOR RELIEF

### First Claim– Title VII
### (Harassment)

54. Paragraphs 1-53 are incorporated by reference.

55. Under Title VII of the Civil Rights Act, it is unlawful to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

56. Providence is an employer within the meaning of 42 U.S.C. § 2000e.

57. As described above, Plaintiff was subjected to conduct at work that was unwelcome and offensive, and created a hostile, intimidating, and offensive work environment, which unreasonably interfered with her ability to work.

58. Providence's racially hostile working environment as alleged herein constitutes an unlawful employment practice.

59. Providence violated 42 U.S.C. § 2000e-2 by discriminating against Ms. Watson in compensation, terms, conditions, and/or privileges of employment because of her race and/or color.

60. Ms. Watson has a claim for damages under 42 U.S.C. § 1981a.

61. Ms. Watson is entitled to her attorney fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

### Second Claim- Title VII
### (Discrimination)

62. Paragraphs 1-61 are incorporated by reference.

63. Providence violated 42 USCS § 2000e-2 by discharging Ms. Watson because of her race and/or color.

64. Ms. Watson has a claim for damages under 42 U.S.C. § 1981a.

65. Ms. Watson is entitled to her attorney fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

### Third Claim – Title VII
### (Retaliation)

66. Paragraphs 1-65 are incorporated by reference.

67. Ms. Watson engaged in protected activity when she advised Providence that she was being discriminated and/or retaliated against in the terms and conditions of her employment based on her race and/or color.

68. Ms. Watson reported, resisted, and opposed conduct, which she in good faith believed to be unlawful, discriminatory, retaliatory, and a violation of state and federal laws.

69. Providence, in response to Ms. Watson's complaints, caused Ms. Watson to suffer adverse employment actions in a variety of ways, including but not limited to denying and interfering with Ms. Watson's work hours and terminating Ms. Watson's employment.

70. Providence violated 42 U.S.C. § 2000e-3(a) by discriminating against Ms. Watson because she opposed and/or reported Providence's unlawful actions.

71. Ms. Watson is entitled to her reasonable costs and attorney fees pursuant to 42 U.S.C. § 2000e-5(k).

### Fourth Claim –ORS 659A.030
### (Harassment)

72. Paragraphs 1-71 are incorporated by reference.

73. As described above, by discriminating against Plaintiff in compensation, terms, conditions, and/or privileges of employment because of her race and/or color, Providence's actions constituted unlawful discrimination on the basis of race in violation of ORS § 659A.030(1)(b).

74. Ms. Watson is entitled to her costs and attorney and expert witness fees pursuant to ORS § 659A.885(1) and ORS § 20.107.

### Fifth Claim –ORS 659A.030(1)(a)
### (Discrimination)

75. Paragraphs 1-74 are incorporated by reference.

76. As described above, by discharging Plaintiff because of her race and/or color, Providence's actions constituted unlawful discrimination in violation of ORS § 659A.030(1)(a).

77. Ms. Watson is entitled to her costs and attorney and expert witness fees pursuant to ORS § 659A.885(1) and ORS § 20.107.

### Sixth Claim – ORS § 659A.030(1)(f)
### (Retaliation)

78. Paragraphs 1-77 are incorporated by reference

79. Providence violated ORS § 659A.030(1)(f) by discriminating against Plaintiff for opposing and/or reporting the Defendant's unlawful actions.

80. Ms. Watson is entitled to her costs and attorney and expert witness fees pursuant to ORS § 659A.885(1) and ORS § 20.107.

### Seventh Claim - Title 1 of the ADA
### (Discrimination)

81. Paragraphs 1-80 are incorporated by reference.

82. Ms. Watson was at all relevant times a qualified person with disabilities within the meaning of 42 U.S.C. § 12112.

83. Providence was aware of Ms. Watson's disabilities.

84. Under the ADA, it is unlawful to discriminate against any individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

85. Providence violated 42 USC § 12112 by discriminating against Ms. Watson because of her known disability.

86. Ms. Watson has a claim for damages under 42 U.S.C. § 1981a.

87. Ms. Watson is entitled to her attorney fees pursuant to 42 U.S.C. §12205.

### Eighth Claim - Title 1 of the ADA
### (Failure to Accommodate)

88. Paragraphs 1-87 are incorporated by reference.

89. A reasonable accommodation was available that would have enabled Ms. Watson to perform the essential functions of her job.

90. Providence violated 42 USC § 12112 by failing to provide a reasonable accommodation to Ms. Watson because of her known disability.

91. Ms. Watson has a claim for damages under 42 U.S.C. § 1981a.

92. Ms. Watson is entitled to her attorney fees pursuant to 42 U.S.C. §12205.

### Ninth Claim – ORS § 659A.112
### (Discrimination)

93. Paragraphs 1-92 are incorporated by reference.

94. Providence was at all relevant times a qualified employer within the meaning of ORS § 659A.106.

95. Ms. Watson was at all relevant times a qualified person with disabilities within the meaning of ORS § 659A.104.

96. Under ORS § 659A.112 it is unlawful for an employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment on the basis of disability.

97. Providence's actions constituted unlawful discrimination against a worker with a disability or perceived disability in violation of ORS § 659A.112.

98. Ms. Watson is entitled to her costs and attorney fees pursuant to ORS § 659A.885(1).

### Tenth Claim – ORS § 659A.112
### (Failure to Accommodate)

99. Paragraphs 1-98 are incorporated by reference.

100. A reasonable accommodation was available that would have enabled Ms. Watson to perform the essential functions of her job.

101. Providence violated ORS § 659A.112(2)(e) by failing to provide a reasonable accommodation to Ms. Watson because of her known disability.

102. Ms. Watson is entitled to her costs and attorney fees pursuant to ORS § 659A.885(1).

### Eleventh Claim– Family Medical Leave Act (FMLA)
### (Discrimination)

103. Paragraphs 1-102 are incorporated by reference.

104. As of the date Ms. Watson requested leave, Ms. Watson (a) had worked for Providence for at least 12 months as of the date her leave started, (b) had more than 1,250 hours of service for Providence during the 12-month period, and (c) worked at a location where Providence employs more than 50 employees within 75 miles of Ms. Watson's worksite.

105. Ms. Watson engaged in protected activity from August 29, 2019 to January 6, 2019. Providence took adverse action against Ms. Watson because she took protected leave, including but not limited to written disciplinary action and termination from employment, in violation of 29 U.S.C. § 2615.

106. Pursuant to 29 U.S.C. § 2617, Ms. Watson seeks to recover her costs, interest, attorney fees, and expert witness fees.

### Twelfth Claim– Oregon Family Leave Act (OFLA)
### (Discrimination)

107. Paragraphs 1-106 are incorporated by reference.

108. Providence is an employer covered by OFLA, ORS § 659A.150 et seq.

109. As of the date of the requested leave, Ms. Watson (a) had worked for Providence for at least 180 days and (b) worked an average of at least 25 hours each week.

110. Providence took adverse action against Ms. Watson because she took protected leave, including but not limited to written disciplinary action and termination from employment, in violation of ORS § 659A.183.

111. Ms. Watson is entitled to her costs and attorney fees pursuant to ORS § 659A.885(1).

## VII. PRAYER FOR RELIEF

WHEREFORE, Ms. Watson respectfully requests judgment against Providence for the following relief:

1. Economic damages, including prejudgment interest, in an amount to be determined at trial;

2. Non-economic damages in an amount to be determined at trial;

3. Liquidated damages in an amount equal to her lost wages, employment benefits, and compensation pursuant to 29 U.S.C. § 2617;

4. Punitive damages in an amount to be determined at trial;

5. Costs;

6. Attorney and expert witness fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 2617, ORS § 659A.885(1), ORS § 20.107; and

7. Such other and further relief as this court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Ms. Watson demands a trial by jury as allowed under FRCP 38.

Dated: September 15, 2021

**OREGON LAW CENTER**

*Cassandra Blake*
Cassandra Blake, OSB No. 193336
cblake@oregonlawcenter.org
Tel.: (503) 640-4115
Of Attorneys for Plaintiff